IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**NATIONWIDE PROPERTY & CASUALTY
INSURANCE COMPANY**                                                          **PLAINTIFF**

v.                              No. 3:13-cv-236-DPM

**DONALD R. FAIRCLOTH, JR.**                                                **DEFENDANT**

### ORDER

Donald Faircloth applied online for a car insurance policy from Nationwide. The company's automated system approved the application and issued Faircloth a policy. A month or so later, Faircloth had a bad accident on a rainy night. He was driving home from a family trip to North Carolina. His Scion hydroplaned on some water covering the highway; he lost control; and the car flipped. Faircloth's girlfriend, Samantha Cohea, died. His niece, Lillian Jones, was injured. After the wreck, Nationwide discovered what it believes are four material misrepresentations in Faircloth's online application. The company seeks a declaration that it may rescind the policy's non-compulsory provisions. Faircloth resists. He argues that three of the supposed misrepresentations flow from ambiguities in Nationwide's poorly worded

and confusing online application. He also argues that the company waived its right to rescind based on the fourth alleged misrepresentation. Faircloth seeks judgment as a matter of law too. The parties agree that Nationwide's settlements with Jones and Cohea's estate have mooted Faircloth's request for a declaration about the company's duty to defend. They disagree about whether his claim that he was entitled to a lawyer of his choice in the state case is moot too.

**1. Alleged Misrepresentations.** Nationwide argues that Faircloth made four material misrepresentations on his application: (1) he would have continuous insurance coverage for his Scion until the Nationwide policy took effect; (2) no one resided with him; (3) he was the car's sole owner; and (4) he didn't use his car primarily for business purposes. In response, Faircloth invokes the "mend the hold" doctrine. He argues that Nationwide's original basis for rescission—the alleged lack of continuous coverage—bars the company from asserting the other alleged misrepresentations now.

This venerable doctrine, however, has no work to do on these facts. An estoppel is the working principle—there must be some detrimental reliance, and some lack of good faith, considering all the circumstances. 5 WILLISTON

ON CONTRACTS § 742 (3d 1961). None exists here. Unlike the mule buyer in *Harriman v. Meyer*, 45 Ark. 37, 40 (1885), Faircloth didn't offer to cure one alleged problem in performance only to be met with another in the lawsuit. Unlike in *Harbor Insurance Company v. Continental Bank Corporation*, 922 F.2d 357, 363 (7th Cir. 1990), there's no inconsistency between the various defenses Nationwide asserts. The new grounds are compatible with the first one, not contradictory. Finally, there's no prejudice. *Mente v. De Witt Rice Mill Company*, 251 F. 252, 253-54 (8th Cir. 1918); *see also Ryerson v. Federal Insurance Company*, 676 F.3d 610, 614 (7th Cir. 2012). Nationwide turned up the new alleged misrepresentations in Faircloth's deposition; Faircloth didn't object to the proposed amended complaint asserting them, *№ 34*; and he knew the most about whether all the facts he stated in his application were true. The company may seek rescission based on all four points.

- **Continuous Coverage?**

Faircloth indicated on his insurance application that he would have insurance coverage for his car until the Nationwide policy took effect. There's some argument about whether Faircloth's former policy actually lapsed. Even if it did, though, Nationwide has waived this ground for rescission because

-3-

it didn't give Faircloth prompt notice it was going to rescind.

According to Nationwide's representative, Richard Yuill, the company decided to rescind Faircloth's policy because of the alleged continuous-coverage misrepresentation on 18 July 2013. Sheilah Thomas, a claims adjuster assigned to Faircloth's claim, was involved in the conversation where Yuill decided to rescind the policy. On the phone a week later, Thomas told Faircloth that his claim was still under investigation.

About a week after this phone call, Nationwide drafted Faircloth's bank account for the August premium. That draft bounced because Faircloth didn't have enough money in his account. Nationwide sent Faircloth a notice of cancellation in early August, telling him to pay his premium or lose coverage. The letter also said that Faircloth would keep his coverage if he made the payment. Faircloth didn't. So Nationwide cancelled the policy on 20 August 2013. Several days later, Nationwide mailed Faircloth a bill for the outstanding premiums. Nationwide told Faircloth that it would turn his case over to a collection agency if he failed to pay by mid-September. Nationwide notified Faircloth about the rescission and tendered his premiums to him in November 2013 after filing this lawsuit. Nationwide didn't return the

insufficient-funds fee it charged Faircloth for the bounced August draft.

Faircloth argues that Nationwide waited an unreasonably long time to rescind the policy based on the alleged lapse-in-coverage misrepresentation. It's undisputed that Nationwide decided to rescind on this ground in July 2013, but didn't give Faircloth notice until November 2013. Whether a delay is unreasonable is usually a fact question for the jury. *New York Life Insurance Company v. Adams*, 151 Ark. 123, 128, 235 S.W. 412, 415 (Ark. 1921). On this record, however, Nationwide's delay was unreasonable as a matter of law.

Consider the precedent. Mr. Adams falsely represented that he was in good health when he applied for a life insurance policy. On behalf of her husband, Mrs. Adams later reapplied for the policy. She answered the same health-related questions truthfully. By mid-December 1919, the insurance company knew about, and had verified, Mr. Adams's misrepresentations. He died in January 1920. The company, which had been idle about the misrepresentations, then sought to rescind the policy. Where the company "had full and complete information in detail concerning the falsity of the statements," waiting a month to rescind the contract was unreasonable as a matter of law. *Adams*, 151 Ark. at 129, 235 S.W. at 415.

Here, as in *Adams*, Nationwide knew the facts. Yuill had made a firm and unequivocal decision (correctly or incorrectly) to rescind Faircloth's policy based on a lapse in coverage. Just as the insurer's delay of one month in *Adams* was unreasonable as a matter of law, Nationwide's delay here of several months, all the while pressing to collect premiums, was unreasonable. There's no jury question. This argument for recision was waived.

- **Undisclosed Household Member?**

Nationwide next claims that Faircloth misrepresented that there were no other members of his household. About two months before Faircloth applied for the policy, he and Cohea leased an apartment together. Cohea's name appears alongside Faircloth's in the lease. Cohea paid half the rent and utilities, had her own key, got some mail, helped clean, and spent three or four nights a week at the apartment. She didn't, however, keep a toothbrush or hairbrush there.

When Cohea didn't sleep at the apartment, except for the occasional night with her sister, she stayed at her father's house. She had her own room. She kept clothes there. And she got most of her mail delivered there, including her car-insurance statements, tax papers, and credit-card bills.

Cohea's driver's license had her father's address.

On the application, Faircloth didn't disclose Cohea as a member of his household. He says he didn't because, to his mind, Cohea still lived with her father. Faircloth argues that Cohea could have only one residence in law, which was still her father's house. Nationwide argues that Faircloth confuses domicile and residence. As Nationwide puts it, Cohea can have multiple residences, but only one domicile.

The Court must give "reside" its plain and ordinary meanings. *Unigard Security Insurance Company v. Murphy Oil USA, Inc.*, 331 Ark. 211, 221, 962 S.W.2d 735, 739–40 (1998). Reside ordinarily means "have one's permanent home in a particular place." Concise Oxford English Dictionary 1217 (Revised 10th Ed. 2002); *accord* Webster's New International Dictionary 2119 (2d Ed. Unabridged 1939). The term is not ambiguous. On this record, a reasonable juror could find that Cohea resided with Faircloth. Another reasonable juror could find that Cohea still resided with her father. The fighting issue is the permanence of Faircloth's and Cohea's cohabitation. Cohea's residence is a disputed material fact that a jury would have to decide.

- **Co-Owner?**

Faircloth's friend Sidney Gately co-owned the Scion. Although Faircloth and Gately both consider Faircloth the car's owner, it's undisputed that Gately's name is on the car's title too. Nowhere on the application did Faircloth disclose Gately as a co-owner. That omission, argues Nationwide, is grounds for rescission because Faircloth represented that the car was "not owned . . . (fully or partially) by any other individuals . . . except as disclosed on this application." № 44-4 at 4. What Faircloth *could* disclose on Nationwide's online application, however, undermines the company's argument.

Faircloth affirmed on his application summary that several statements were "true and accurate *as indicated on the application.*" Ibid (emphasis added). The Court must look to the application itself to see what Faircloth indicated. *Integon Life Insurance Company v. Vandergrift*, 11 Ark. App. 270, 276, 669 S.W.2d 492, 495 (1984).

Using Faircloth's application summary, Nationwide recreated screenshots of the application as Faircloth would have seen it. In one of those, Nationwide asked Faircloth whether there was a loan or lease on the Scion.

№ *71-4 at 14–15*. Faircloth answered that he had taken out a loan, and he provided details. *№ 71-4 at 14*. That was true; no one says otherwise. That's the only question in the application that asked Faircloth whether anyone else had a legal interest in the car. If Nationwide posed a question about co-owners, it is not in the evidence submitted. So, "as indicated on the application[,]" Faircloth correctly affirmed that there was a loan on the car. Faircloth didn't misrepresent being the car's sole owner. Nationwide didn't ask about co-owners. The company loses as a matter of law on this point.

- **Primary Use?**

In the application, Nationwide asked Faircloth what the "primary use" for the car would be. Faircloth answered "work/school"; Nationwide says the correct answer was "business." By putting his electronic signature on the application summary, Faircloth affirmed that he didn't put his car to any "commercial use, the pickup and delivery of goods . . . ." *№ 44-4 at 4*. Faircloth argues that "primary use" is ambiguous.

When Faircloth applied for the insurance, he was living in West Memphis, Arkansas. He was working as a delivery driver for National Delivery Services, delivering car parts between West Memphis and

Greenville, Mississippi. № 44-7 at 45 (deposition pagination). Faircloth testified that he was putting at least 1,200 miles a week on his Scion as a delivery driver. № 44-7 at 82–83 (deposition pagination). He was also using his car to commute to his second job at Sonic in Marion, to take non-work trips to Jonesboro and Memphis, and to run errands. It's unclear exactly how many miles a week were involved in these personal uses. But there's no contention that the total was anywhere close to his delivery-related mileage.

In the application, Nationwide asked Faircloth about his Scion's primary use. The application gave Faircloth three choices:

    Work/School (commute to/from, errands)
    Pleasure (recreational driving)
    Business (deliveries, sales calls, taxi).

№ 71-4 at 2. If Faircloth needed more information about these choices, the application's help feature offered it. If he had clicked on the "?" icon, Faircloth would have seen these explanations:

    Primary use: Describes the most typical use for this vehicle.

    Work/School: Refers to a vehicle driven to and from work/school and also includes pleasure driving.

    Pleasure (not Work/School): Refers to a vehicle primarily used for personal purposes, such as driving on shopping trips or errands.

> Business: Refers to a vehicle used for business purposes, such as making deliveries or sales calls.

№ 71-4 at 17.

Nationwide says that it has reproduced the application as Faircloth would have seen it. Faircloth kind-of disputes whether the online application he filled out included the parentheticals. This issue wasn't covered on deposition. In a post-deposition affidavit, Faircloth said that he saw "work/school, pleasure, and business." № 60-2 at 7. Faircloth didn't say in his affidavit that the parentheticals weren't there; but he argues in his brief that they weren't. № 59 at 39. The law presumes that Faircloth read and understood the application and the resulting summary, which he signed. *McCaleb v. National Bank of Commerce of Pine Bluff*, 25 Ark. App. 53, 57, 752 S.W.2d 54, 59 (1988). Faircloth hasn't created a genuine issue of material fact about how the screen appeared. *Matsushita Electric Industrial Company, LTD., v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). A reasonable fact finder could come to only one conclusion: the parentheticals were there.

Faircloth argues that, even with the parentheticals, primary use is ambiguous; reasonable people could interpret it differently. The

-11-

Court disagrees. A reasonable person in Faircloth's position — a person putting 1,200 miles a week on his car delivering things — would have chosen business as the primary use. If there was any cloudiness, the help feature adequately eliminated it. Finally, Faircloth affirmed on the application summary with his signature that he was not using the Scion for "the pickup and delivery of goods . . .." № 44-4 at 4. After considering the application and the summary, *Integon, supra,* the Court sees no ambiguity in these circumstances. Faircloth misrepresented his Scion's primary use. Nationwide is therefore entitled to rescind the policy on this basis.

**2. Faircloth's Counterclaims.** Faircloth seeks a declaration that Nationwide owes him a duty under the policy to defend against third-party claims. He also seeks a declaration that Nationwide is on the hook for any part of a judgment that exceeds the policy limits. All these claims are moot because Nationwide has settled with Jones and Cohea's estate. By doing so, Faircloth now argues, Nationwide has waived all grounds for rescinding the policy. He is mistaken. Those settlements are inadmissible for that purpose. FED. R. EVID. 408.

Faircloth also seeks a declaration that he should've been able to choose his own lawyer to defend the Cohea estate's claims. He argues this claim isn't moot because it's capable of being repeated yet evading review. This mootness exception is available only in "exceptional situations." *Spencer v. Kemna*, 523 U.S. 1, 17 (1998).

The circumstances aren't exceptional. First, denying an insured his choice of lawyer isn't such an evanescent occurrence that it cannot be litigated. Faircloth in fact has cited cases where the issue was fully litigated. *E.g., Union Insurance Company v. The Knife Company, Inc.*, 902 F. Supp. 877 (W.D. Ark. 1995). Second, Faircloth hasn't shown that he reasonably expects to be in these circumstances again. The company has cancelled this policy. And nothing of record suggests that Faircloth will buy more insurance from Nationwide. His choice-of-lawyer claim is moot.

\* \* \*

Nationwide's motion, № 42, is granted. Faircloth's motion, № 58, is denied as moot.

So Ordered.

*DPMarshall Jr.*
D.P. Marshall Jr.
United States District Judge

19 August 2015